ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY SHIH (CABN 296945)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    jeffrey.shih@usdoj.gov; 415-436-7168
    waqar.hasib@usdoj.gov; 415-436-7261

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ADAM SHAFI,<br><br>    Defendant. | CASE NO. 3:15-CR-582 WHO<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LORENZO VIDINO AND HOLD A DAUBERT HEARING<br><br>Hearing Date;  June 21, 2018<br>Hearing Time:  1:30 p.m. |

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  DR. VIDINO'S EXPERTISE AND ANTICIPATED TESTIMONY ......................1

    A.   Dr. Vidino's Expertise ................................................................................1

    B.   Dr. Vidino's Anticipated Testimony ..........................................................3

III. LEGAL STANDARD ............................................................................................4

IV. ARGUMENT ..........................................................................................................5

    A.   The Government's Expert Disclosure Notice Was Sufficient ....................5

    B.   Dr. Vidino Has Specialized Knowledge About al-Nusrah .........................7

    C.   Dr. Vidino's Background in Terrorism and Radicalization in Italian and European Affairs Does Not Disqualify Him From Being an Expert on Terrorism in the United States .....................................................................8

    D.   Dr. Vidino's Proposed Testimony About ISIL Is Deeply Relevant to the Evidence in this Case ..................................................................................8

    E.   Dr. Vidino's Testimony About Prominent Individuals in ISIL, al-Nusrah, and Other Related Groups Is Based On the Evidence In This Case, and Therefore Relevant ......................................................................................9

    F.   Dr. Vidino's Work Has Been Deemed Reliable By Numerous Courts and Other Institutions .......................................................................................10

    G.   Dr. Vidino's Work Is Admissible Under the *Kumho* Line of Cases .......10

    H.   The Government Is Not Offering Dr. Vidino To Testify About the Profile of a Terrorist ..................................................................................................11

    I.   The Fact that Dr. Vidino Has Not Met the Defendant Does Not Disqualify Him as an Expert .......................................................................................12

    J.   Dr. Vidino's Testimony Will Not Violate The Confrontation Clause .......13

    K.   Dr. Vidino's Testimony is Neither Unfairly Prejudicial, Nor Confusing, Nor of Low Probative Value .............................................................................13

    L.   A *Daubert* Hearing Is Not Warranted to Establish the Admissibility of Dr. Vidino's Testimony ..................................................................................15

V.  CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

## Federal Cases

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ............................................................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................... 4, 10, 15

*Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) ................................................................ 10, 11

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ......................................................................... 4

*United States v. Benkahla*, 530 F.3d 300 (4th Cir. 2008) ......................................................... 14

*United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) ............................................................ 5, 6

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) ........................................................... 14

*United States v. Felton*, 417 F.3d 97 (1st Cir. 2005) ................................................................ 14

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ............................................... 4, 10, 14

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ........................................................... 14

*United States v. Hayat*, 710 F.3d 875 (9th Cir. 2013) .............................................................. 14

*United States v. Kareem*, 15-CR-0707 ........................................................................... 2, 10, 12

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ................................................................. 4

*United States v. Vera*, 770 F.3d 1232 (9th Cir. 2014) ............................................................. 13

*United States v. Williams*, 13-CR-764 .................................................................................. 5, 10

## Federal Rules

Fed. R. Evid. 403 ....................................................................................................................... 14

Fed. R. Evid. 702 .................................................................................................................. 4, 15

Fed. R. Evid. 703 ....................................................................................................................... 13

## I. INTRODUCTION

The defendant has moved this Court to exclude the testimony of the government's proposed terrorism expert, Dr. Lorenzo Vidino, Director of the Program on Extremism at George Washington University. To the contrary, for the reasons discussed below, Dr. Vidino's testimony is both reliable and relevant to the facts at issue in this case, and clearly admissible. Nor is a *Daubert* hearing necessary to determine the admissibility of Dr. Vidino's testimony. If anything, the defendant's motion highlights the susceptibility of his own expert witness, Dr. Marc Sageman, to the same accusations he raises against Dr. Vidino. Accordingly, the defendant's motion should be denied.

## II. DR. VIDINO'S EXPERTISE AND ANTICIPATED TESTIMONY

### A. Dr. Vidino's Expertise

As detailed in the government's expert notice, Dr. Vidino is currently the Director of the Program on Extremism at George Washington University, and has been since 2015. Def. Mot. to Exclude Expert Testimony and Request *Daubert* Hearing at Exhibit A (herein "Def. Exhibit A"), at pg. 5 of 29. The Program on Extremism's mission is to "provide[] analysis on issues related to violent and non-violent extremism. The Program spearheads innovative and thoughtful academic inquiry, producing empirical work that strengthens extremism research as a distinct field of study. The Program aims to develop pragmatic policy solutions that resonate with policymakers, civic leaders, and the general public.... The Program brings together a multidisciplinary team of experts from across the globe, including government officials with experience in public safety and law enforcement, scholars, former extremists, and counter-extremism practitioners providing first-hand assistance to families grappling with radicalization." See https://extremism.gwu.edu/about (last accessed June 7, 2018). Recent publications by the Program that Dr. Vidino authored or co-wrote include ISIS[1] in America – From Retweets to Raqqa (2015) and Fear Thy Neighbor: Radicalization and Jihadist Attacks in the West (2017). Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018). Other publications by the Program to which Dr. Vidino contributed include The Travelers: American Jihadists

---

[1] Another common name for ISIS is the Islamic State of Iraq and the Levant, abbreviated "ISIL." It is also frequently referred to by its Arabic acronym, Daesh. This motion refers to ISIL and ISIS interchangeably.

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY
1

in Syria and Iraq (2018) and Not Just the Caliphate: Non-Islamic State-Related Jihadist Terrorism in America (2016). *Id.*

Dr. Vidino is also currently the Head of the Radicalization and International Terrorism Program at the Institute for International Political Studies (ISPI) in Milan, which is partnered with Dr. Vidino's program at G.W. University. ISPI's program "focuses on the empirical analysis of violent and non-violent extremism in Europe and the world, with a particular emphasis on jihadist ideology." https://www.ispionline.it/en/ricerca/radicalizzazione-e-terrorismo-internazionale (last accessed June 7, 2018).

Over the course of his career, Dr. Vidino has testified on terrorism related issues in several federal criminal trials involving material support to foreign terrorist organizations. Def. Exhibit A at 16-29; *see, e.g., United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, Docket No. 365 (D. Ariz.); *United States v. Al Farekh*, 15-CR-00266-BMC, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, Trial Trans. March 9, 2018 (N.D.Ohio). He has also testified on numerous occasions on terrorism-related issues before the U.S. Congress, as well as the Italian Parliament, the Danish Parliament, and the Canadian Parliament. Def. Exhibit 1 at 12-13 of 29.

Prior to his current directorships at George Washington University and ISPI, Dr. Vidino held various research positions related to terrorism and radicalization at, among others, Harvard University's Kennedy School of Government, the RAND Corporation, and the U.S. Institute of Peace. He was the Research Programs Manager at the Jebsen Center for Counterterrorism Studies at the Fletcher School of Law and Diplomacy at Tufts University, where he also obtained his Master's degree and Ph.D. focusing on homegrown jihadist networks in the West, and the process of radicalization and recruitment in the United States by foreign terrorist organizations. Def. Exhibit A at pgs. 5-6 of 29; *see also United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, at pg. 4, Docket No. 365 (D. Ariz.). He has taught classes on terrorism and radicalization at Tufts University, the University of Maryland (National Consortium for the Study of Terrorism and Responses to Terrorism – START), and the National Defense University. He also regularly provides commentary on terrorism and radicalization issues to diverse media outlets (including The New York Times, The Washington Post, The Wall Street Journal,

PBS, CNN, Fox News, MSNBC, BBC, Al Jazeera, and Al Arabiya, among others).  Def. Exhibit A at pg. 6 of 29.

### B. Dr. Vidino's Anticipated Testimony

Dr. Vidino possesses knowledge, experience, training, and education that will undoubtedly assist the jury in understanding the evidence in this case.  The government provided to the defendant on March 12, 2018, a detailed summary of Dr. Vidino's expected testimony.  It was attached to the defendant's motion to exclude as Def. Exhibit A, so the government does not reattach it here.  However, in summary, the government anticipates that Dr. Vidino's testimony will address the following general areas:

- The rise of the al-Nusrah Front in conjunction with and in comparison to the rise of the Islamic State of Iraq and the Levant (ISIL);

- The use of the internet and social media by both groups to recruit and radicalize foreign fighters, and how such recruits travel to conflict zones as Syria;

- The paths of radicalization and travel for such individuals seeking to join al-Nusrah and ISIL in conflict zones such as Syria;

- Whether particular evidence that Dr. Vidino has reviewed in this case relating to the defendant is consistent with such paths of radicalization and travel;

- The presence of al-Nusrah and ISIL in Syria and other countries, including, Egypt, Myanmar, and elsewhere;

- Prominent figures involved in al-Nusrah, ISIL, and other affiliated groups such as al-Qaida in Iraq, including specific individuals relevant to the evidence in this case, including Abu Mohmmed al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-Baghdadi;

- The goals and ideologies behind both al-Nusrah and ISIL, and the use of violence by both groups to achieve their objectives;

- Specific vocabulary (enumerated in more detail in the government's notice) that was used by the defendant in this case, and that is also used by individuals seeking to join al-Nusrah and/or ISIL.

*See generally*, Def. Exhibit A.  Each of these general categories is directly related to specific topics referenced by the defendant himself and his associates in intercepted communications and other evidence that forms part of the proof of his guilt in this case. This testimony falls squarely within the parameters of permissible expert testimony under Federal Rule of Evidence 702, as numerous courts have similarly found. Accordingly, as discussed in further detail below, Dr. Vidino should be permitted to testify at trial.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); see also *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). With respect to when expert testimony will assist the trier of fact, the advisory committee notes for Rule 702 "refer to the traditional common law rule that expert testimony is called for when the 'untrained layman' would be unable intelligently to determine 'the particular issue' in the absence of guidance from an expert." *United States v. Mejia*, 545 F.3d 179, 189 (2d Cir. 2008); *see also* Fed. R. Evid. 702 advisory committee notes ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and footnotes omitted). The Ninth Circuit has stated that "[t]he *Daubert*

factors . . . simply are not applicable" in cases where "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). *See also United States v. Williams*, 13-CR-764-WHO, Order on Government's Gang Expert Testimony, Docket No. 927, filed March 9, 2016 (N.D.Cal.).

## IV.   ARGUMENT

Despite Dr. Vidino's qualifications, the defendant moves to exclude his testimony in its entirety.[2] For the reasons discussed below, each of the defendant's objections to Dr. Vidino's testimony are without merit.

### A.   The Government's Expert Disclosure Notice Was Sufficient

The expert disclosure notice that the government provided to the defense on March 12, 2018, regarding Dr. Vidino's anticipated testimony was sufficient and comported with Rule 16 of the Federal Rules of Criminal Procedure. It is a curious argument for the defendant to allege that the notice was faulty for providing only a list of topics, not a summary of expected testimony, as the defendant's own expert disclosure notice with respect to his proposed expert, Dr. Marc Sageman, was no more detailed than the government's. *Compare* Def. Exhibit A at pgs. 2-4 of 29 with United States' Motion to Limit Testimony of Dr. Marc Sageman, Docket No. 208, Exhibit 1 (herein, Gov. Exhibit 1), at pgs. 2-4 of 27. The defendant cannot on the one hand provide the expert disclosure notice that he did, and then turn around and allege a Rule 16 violation on the part of the government. Moreover, while the government objects to some portions of Dr. Sageman's testimony on substantive grounds, the government did not and does not object to the sufficiency of the defendant's expert disclosure notice. Either both the Vidino and Sageman disclosures were sufficient (as is the government's position) or they are both deficient. The defendant cannot have it both ways.

---

[2] The government notes that the defendant's proposed expert, Dr. Marc Sageman, has equally impressive, albeit somewhat unique, qualifications, given Dr. Sageman's background as both a psychologist and a former intelligence officer. Accordingly, though the government filed a motion to exclude some of Dr. Sageman's proposed testimony, the government conceded that Dr. Sageman could probably testify as an expert. *See* United States Motion to Limit Expert Testimony of Dr. Marc Sageman, Docket No. 208. The government is thus somewhat surprised that the defendant now seeks to exclude Dr. Vidino's testimony *in its entirety*, based on several arguments to which his own expert, Dr. Sageman, is equally if not moreso susceptible. What's good for the goose is good for the gander: if the Court allows Dr. Sageman to testify, the Court should also allow Dr. Vidino to testify accordingly.

To support his position that the government's disclosure was deficient, the defendant relies on a Seventh Circuit opinion, *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001), which of course is not binding on this Court. Regardless, *Duvall* is distinguishable. In *Duvall*, the Seventh Circuit found that the government's three-sentence description of a law enforcement drug trafficking expert witness was insufficient. See *Duvall*, 272 F.3d at 828, and fn. 1. In contrast, the government's expert disclosure here is far more detailed. Specifically, as described above and as described in further detail in the notice itself, the government anticipates that Dr. Vidino will testify about:

- The rise of the al-Nusrah Front in conjunction with and in comparison to the rise of the Islamic State of Iraq and the Levant (ISIL);
- The use of the internet and social media by both groups to recruit and radicalize foreign fighters, and how such recruits travel to conflict zones as Syria;
- The paths of radicalization and travel for such individuals seeking to join al-Nusrah and ISIL in conflict zones such as Syria;
- Whether particular evidence that Dr. Vidino has reviewed in this case relating to the defendant is consistent with such paths of radicalization and travel;
- The presence of al-Nusrah and ISIL in Syria and other countries, including, Egypt, Myanmar, and elsewhere;
- Prominent figures involved in al-Nusrah, ISIL, and other affiliated groups such as al-Qaida in Iraq, including specific individuals relevant to the evidence in this case, including Abu Mohmmed al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-Baghdadi;
- The goals and ideologies behind both al-Nusrah and ISIL, and the use of violence by both groups to achieve their objectives;
- Specific vocabulary (enumerated in more detail in the government's notice) that was used by the defendant in this case, and that is also used by individuals seeking to join al-Nusrah and/or ISIL

*See generally* Def. Exhibit A at pgs. 2-4 of 29. In short, *Duvall* is distinguishable.

The defendant nonetheless claims that the government's notice was so lacking that he does not know the rough boundaries of Dr. Vidino's opinion, and cannot adequately prepare for trial. Yet the government's disclosure was clear: Dr. Vidino will testify about the paths of radicalization and travel for individuals seeking to join al-Nusrah and/or ISIL in Syria, and opine on whether particular evidence in this case is consistent with such paths of radicalization and travel. *See* Def. Exhibit A at pg. 2 of 29. In any event, the defendant articulates the rough boundaries of Dr. Vidino's anticipated opinion testimony

himself in his motion. Def. Mot. at pg. 4, fn. 3. Thus, the defendant defeats his own argument that he is unable to adequately prepare for trial.

### B. Dr. Vidino Has Specialized Knowledge About al-Nusrah

The defendant also argues that Dr. Vidino should be precluded from testifying because he lacks specialized knowledge about al-Nusrah, the foreign terrorist organization named in the indictment. Here too, the defendant defeats his own argument. In his motion he lists several instances where Dr. Vidino specifically discusses al-Nusrah in publications. Def. Mot. at pgs. 6-7. Nor does the defendant's list constitute "the extent of Vidino's written work on al-Nusrah." *See*, *e.g.*, "Beyond Iraq and Syria: ISIS's Global Reach," Written Testimony of Lorenzo Vidino, June 8th, 2017, submitted to U.S. Senate Foreign Relations Committee (noting that "Jabhat Fateh al Sham (previously known as Jabhat al Nusra), has quietly but surely carved out a de-facto mini state in parts of Syria.") In addition, Dr. Vidino's Program on Extremism has published several reports that discuss al-Nusrah in further detail; Dr. Vidino is specifically cited as contributing to these reports that were published under his leadership of the Program on Extremism, if not under his name. *See*, *e.g*, The Travelers: American Jihadists in Syria and Iraq." Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018)

One factor to bear in mind as the Court considers the defendant's objection is that al-Nusrah is a relatively new player in the Syrian crisis – according to Stanford University's "Mapping Militants" website that defendant cites to in his motion, al-Nusrah has only been in existence since late 2011, when the leader of al-Qaeda in Iraq, Abu Bakr al-Baghdadi sent his operative, Abu Mohammed al-Jolani, to Syria to organize regional jihadist cells. See http://web.stanford.edu/group/mappingmilitants/cgi-bin/maps/view/Syria (last accessed on June 7, 2018). This is in contrast to ISIL, which according to the same Stanford website can trace its origins back to the early 2000s and the U.S. invasion and subsequent occupation of Iraq. See http://web.stanford.edu/group/mappingmilitants/cgi-bin/maps/view/Iraq (last accessed on June 7, 2018). Yet despite al-Nusrah's relatively short history, Dr. Vidino has nevertheless been able to incorporate the group's existence and significance into his works, as even the defendant acknowledges.

On top of this, once again the defendant's own expert, Dr. Sageman, is even more susceptible to the same accusation that he levels against Dr. Vidino. See Gov. Exhibit 1 at pg. 3 of 27 ("Dr. Sageman

will testify about the differences amongst various terrorist organizations operating in Syria, particularly the Islamic State of Syria ("ISIS") and al-Nusra Front."). The government has given at least a cursory review to all of Dr. Sageman's works published after the 2011 founding of al-Nusra, and has yet to find *even one* mention of the group (though the government concedes that Dr. Sageman's works, like Dr. Vidino's, are voluminous, and will happily stand corrected on this front). The defendant warns in his motion that Dr. Vidino cannot "simply learn about al-Nusrah to testify in this case." Def. Mot. at 11. Dr. Sageman should heed the same warning.

### C. Dr. Vidino's Background in Terrorism and Radicalization in Italian and European Affairs Does Not Disqualify Him From Being an Expert on Terrorism in the United States

The defendant makes a half-hearted attempt to suggest that because Dr. Vidino did his undergraduate studies in Italy, he cannot be qualified to discuss radicalization issue in the United States. Def. Mot. at pg. 7. This xenophobic argument must fail. For one thing, the defendant overlooks the fact that after studying in Italy, Dr. Vidino subsequently obtained his Masters' degree and Ph.D. from a university in the United States, currently serves as the director of a program on extremism at another university in the United States, and has conducted research and served as a fellow at several well-regarded universities and research institutions in the United States. Moreover, Dr. Vidino's works include publications entitled "ISIS *in America*: From Retweets to Raqqa," "Countering Violent Extremism *in America*," "Explaining the Lack of an *American* Domestic Counter-radicalization Strategy," and "Homegrown jihadist terrorism *in the United States*: a New and Occasional Phenomenon" Def. Exhibit A at pgs. 8,13 of 29 (emphasis added). Similarly, the Program on Extremism under Dr. Vidino's directorship published a report entitled "The Travelers: *American* Jihadists in Syria and Iraq." Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018). In short, the notion that Dr. Vidino cannot be an expert on issues involving the United States because he studied in Italy is of no merit.

### D. Dr. Vidino's Proposed Testimony About ISIL Is Deeply Relevant to the Evidence in this Case

Contrary to the defendant's suggestion, Dr. Vidino's proposed expert testimony regarding ISIL is deeply relevant to this case. True, the government readily admits that the defendant is charged with

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

joining not ISIL but al-Nusrah. However, the evidence in this case will demonstrate the defendant's consumption and consideration of materials of other foreign terrorist organizations, such as ISIL and al-Qaeda, contributed to his becoming enamored with, and his attempt to provide material support to, al-Nusrah. One need look no further than the telephone calls described in the criminal complaint affidavit in this case, in which the defendant is alleged to have spoken at length about the differences between ISIL and al-Nusrah, and how as a result of these differences he becomes enamored with the leader of al-Nusrah. *See, e.g.*, Affidavit in Support of Criminal Complaint, Docket No. 1 (herein "Complaint Affidavit), at pg. 9-10, paragraph 28 ("Adam echoed the criticism of the JN [i.e., Jabhat al-Nusrah] amir saying the "Daulat" [i.e. "the State," meaning ISIL] took killing too easily. The "Daulat" sanctioned the blowing up of markets, which Adam described as "not the right way," and practiced *takfir*. Adam explained that he thought this was very wrong. He described how JN had tried to join hands with the "Daulat," but they had responded by killing and beheading the JN amir as well as crucifying and cutting off the hands of JN supporters. Adam was so impressed with JN that he commented "If the 'Daulat' kills them I want to die with them.") In other words, if the jury is to determine the defendant's intent in attempting to join al-Nusrah, they must understand why he was so critical of ISIL. Dr. Vidino's testimony regarding ISIL is thus critical to the government's theory of how the defendant became enamored with al-Nusrah. Moreover, the government notes that the defendant disclosed that he expected his own expert, Dr. Sageman, to discuss ISIL. If ISIL is relevant for Dr. Sageman, then it must also be relevant for Dr. Vidino.

E.  **Dr. Vidino's Testimony About Prominent Individuals in ISIL, al-Nusrah, and Other Related Groups Is Based On the Evidence In This Case, and Therefore Relevant**

The government advised in its expert disclosure notice that it anticipated Dr. Vidino would testify about specific prominent individuals in al-Nusrah, ISIL, and other related terrorist organizations, specifically naming Abu Mohammad al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-Baghdadi. Contrary to the defendant's suggestion, the government did not randomly pick these names out of a hat. Rather, they are all names of individuals whom the defendant mentioned in one way or another, either in intercepted telephone calls, in emails, or in web searches. *See, e.g.*, Complaint Affidavit at pgs. 9-10 (describing defendant's review of interview with al-Jolani, spelled "Jaulani" in

affidavit). Again, if the jury is to determine the defendant's intent to provide support to al-Nusrah, they will need to understand who these individuals are, and why the defendant was interested finding out more about in them. Dr. Vidino's testimony will be invaluable in this regard.

### F. Dr. Vidino's Work Has Been Deemed Reliable By Numerous Courts and Other Institutions

The defendant broadly attacks Dr. Vidino's work as unreliable, and therefore impermissible as expert testimony. Def. Mot. at pgs. 9-12. Notably absent from the defendant's attack is the fact that district courts around the country have repeatedly permitted Dr. Vidino to testify in criminal jury trials as an expert on the very topics he will testify about here. See, e.g., *United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, Docket No. 365 (D. Ariz.); *United States v. Al Farekh*, 15-CR-00266-BMC, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, Trial Trans. March 9, 2018 (N.D.Ohio). Also absent from the defendant's motion is the fact that Dr. Vidino has testified as an expert on terrorism and radicalization to the U.S. Senate Foreign Relations Committee, the U.S. House International Relations Committee, the Italian Parliament, the Danish Parliament, and the Canadian Parliament. There is a good reason why the defendant omitted any mention of these appearances in his motion: he cannot credibly claim that all of these courts and legislative houses were wrong in assessing Dr. Vidino's reliability.

### G. Dr. Vidino's Work Is Admissible Under the *Kumho* Line of Cases

The defendant broadly attacks Dr. Vidino's work for being too descriptive and theoretical, and for being based on statistically insignificant sample sizes, arguing that "*Daubert* limits expert testimony to opinions derived from rigorous, testable science and social science that carry the traditional indicia of reliability, such as acceptance by peer-review and measurably low error rates." Def. Mot. at pg. 11. Yet *Daubert* does no such thing. To the contrary, in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court concluded that the factors mentioned in *Daubert* can neither necessarily nor exclusively be applied to all experts or in every case. *Kumho Tire*, 526 U.S. at 141. This Court has held as much, reasoning that the *Daubert* factors are "simply not applicable" in cases where the proposed expert testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or the theory behind it." *United States v. Williams*, 13-CR-764-WHO, Order on Government's Gang

Expert Testimony, Docket No. 927, filed March 9, 2016 (N.D.Cal.), quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).  Rather, *Kumho Tire* "heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function… Indeed, not only must the trial court be given broad discretion to decide whether to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability.'" *Hankey*, 203 F.3d at 1168, quoting *Kumho Tire*, 119 S.Ct. at 1175-75 (emphasis in original).

In any event, the defendant's complaints about Dr. Vidino's work are unfounded.  A recent publication produced Dr. Vidino's Program on Extremism entitled The Travelers is illustrative.  The report was written by Dr. Vidino's deputy director and research director, as well as a research fellow, all of whom work under Dr. Vidino.  Dr. Vidino, in his capacity as Director of the program, wrote an introductory note to the report.  "Our latest report, *The Travelers: American Jihadists in Syria and Iraq*, provides a uniquely comprehensive analysis of the phenomenon of American foreign fighters in Syria and Iraq.  Drawing on thousands of pages of documents and dozens of exclusive-access interviews (including with returning foreign fighters), the report describes a phenomenon that is bound to have enormous implications on the security environment for the coming years.  As the nature of the threat evolves, the Program on Extremism is committed to continuing its effort to produce evidence-based and non-partisan analysis to support sound policymaking and public debate."   *See* The Travelers: American Jihadists in Syria and Iraq at pg. vii, "A Note from the Director.  Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018).

**H.  The Government Is Not Offering Dr. Vidino To Testify About the Profile of a Terrorist**

The defendant repeatedly tries to characterize Dr. Vidino's testimony as impermissible "profile" testimony.  *See*, *e.g.*, Def. Mot. at pgs. 12-13.  It is not.  Indeed, as the defendant points out in his motion, Dr. Vidino has on numerous occasions stated that there is no real profile of a terrorist.  For example, in a recent trial in the District of Arizona where a defendant was charged with attempting to provide material support to ISIL, Dr. Vidino testified on direct examination for the government that "there's no such thing as a common profile of ISIS support or ISIS sympathizers in the U.S.  It really runs the gamut.  You have teenage girls and 40-year-old-men.  You have all kinds of socioeconomic

backgrounds, all kinds of educational backgrounds, different patterns of radicalization, different recruiting patterns, so absolute diversity in profiles." *United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. Pg. 8, March 9, 2016, Docket No. 365 (D. Ariz.). The government was well aware of these statements when it selected Dr. Vidino to be its expert, and fully expects Dr. Vidino to testify similarly at this trial.

Nothing about this testimony precludes Dr. Vidino from testifying at the defendant's trial. Indeed, as described above, Dr. Vidino testified in Arizona that there is no standard profile of a terrorist, then went on to analyze particular evidence that was at issue in that case, much as the government expects him to do here. *Id* at pgs 10-27. If anything, the defendant's "profile" argument leads to an impossible conundrum – he would object if Dr. Vidino were to testify that there is a standard profile of a terrorist, but now he also objects knowing that Dr. Vidino will likely testify that there is no profile of a terrorist. He cannot have it both ways.

Particularly problematic is the defendant's argument that Dr. Vidino's testimony constitutes impermissible character evidence. Def. Mot. at pgs. 12-13. This argument is based entirely on the mistaken assumption that Dr. Vidino would offer testimony about the profile of a terrorist, and that the defendant fits that profile. As discussed above, Dr. Vidino will offer no such profile testimony. Thus the defendant's argument about character evidence is meritless.

### I. The Fact that Dr. Vidino Has Not Met the Defendant Does Not Disqualify Him as an Expert

The defendant raises a curious argument that Dr. Vidino's testimony is inadmissible because he has never met the defendant or spoken to him. The defendant cites no law standing for the proposition that an expert must interview the defendant before testifying in a criminal trial, and for good reason – there isn't any. In any event, if this were really a reason to preclude Dr. Vidino from testifying at trial, then there would be an obvious remedy – the Court could order the defendant to be interviewed by Dr. Vidino.

This argument, however, highlights one of the more problematic issues with the defendant's proposed expert, Dr. Sageman, who *has* met the defendant, and whose opinions of the defendant appear to be in large part based on self-serving exculpatory hearsay statements the defendant made to him. The

government addresses this problem with Dr. Sageman elsewhere, in its motion to limit his testimony. *See* United States' Motion to Limit Testimony of Dr. Marc Sageman, Docket No. 208. at pgs. 5-6.

### J. Dr. Vidino's Testimony Will Not Violate The Confrontation Clause

Without providing any specific areas of complaint, the defendant alleges that Dr. Vidino's testimony would violation the Confrontation Clause because it consists of "repackaged testimonial hearsay" Experts, of course, may rely on inadmissible hearsay, as well as any other form of inadmissible evidence, if "experts in the particular filed would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014), *quoting* Fed. R. Evid. 703.  Here, the defendant generally objects to Dr. Vidino relying on "legal documents – complaints, indictments, affidavits" to base his opinions.  The question, then, is whether experts in Dr. Vidino's field would also reasonably rely on such materials.  Dr. Sageman, the defendant's proposed expert, in his book "Understanding Terror Networks," explained that when gathering information his sources included "the documents and transcripts of legal proceedings… In decreasing degrees of reliability, I favored transcripts of court proceedings subject to cross-examination, followed by reports of court proceedings, then corroborated information from people with direct access to the information provided, uncorroborated statements from people with that access, and finally statements from people who had heard the information secondhand." Understanding Terror Networks, pg. 65 (2004).  In other words, the defendant's proposed expert relies at least in part, if somewhat suspiciously, on the same kinds of documents that the defendant says should preclude Dr. Vidino from testifying at all.  This Court should not entertain such a double standard.

### K. Dr. Vidino's Testimony is Neither Unfairly Prejudicial, Nor Confusing, Nor of Low Probative Value

Lastly, the defendant suggests that Dr. Vidino's testimony will unfairly prejudice, mislead, and confuse the jury because any testimony about ISIL is irrelevant, will evoke "fear and horror" among the jury, and will cause the jury to conflate ISIL with al-Nusrah.  For the reasons discussed above, however, testimony about ISIL is critical to the government's theory of the case.  That, if anything, makes it imperative for the jury to hear from an expert such as Dr. Vidino, who has knowledge of and can explain the nuances separating the two groups.

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY
13

1  More importantly, it is the defendant's conduct here that has forced the issue of ISIL and al-Nusrah into the center of this case.  See, e.g., *United States v. Felton,* 417 F.3d 97, 103 (1st Cir. 2005)(finding that the government's use of the term "terrorist" to describe defendants and their actions was appropriate because, while the term is "highly pejorative," it was "a function of the acts defendants engaged in, not the government's inaccurate description of those acts.")  The defendant here consumed and considered materials of several foreign terrorist organizations, including ISIL and al-Nusrah.  He cannot now complain that the government is offering expert witness who will testify about those organizations.  Simply put, the defendant, in essence, chose the evidence, and his actions require a discussion of both ISIL and al-Nusrah.  The mere fact that evidence is probative and inculpatory does not render it prejudicial, let alone unduly so.

Numerous courts have concluded that expert testimony in terrorism cases is not only relevant and admissible, but essential. See *United States v. Hassan*, 742 F.3d 104, 130 - 31 (4th Cir. 2014) (expert testimony about complex evidence necessary in terrorism case given terminology and concepts likely unfamiliar to jurors); *United States v. Benkahla*, 530 F.3d 300, 309 -10 (4th Cir. 2008) (lengthy expert testimony about various aspects of radical Islam appropriate and indeed necessary in light of complicated evidence touching on wider variety of terms, ideas, people and organizations connected to radical Islam); *United States v. Farhane*, 634 F.3d 127, 158 - 60 (2d Cir. 2011) (upholding admission of expert testimony regarding al-Qaeda's origins, history, structure, leadership, instructional methods, operational logistics, acts of terrorism, and radical Islamic ideology); *see also United States v. Hayat*, 710 F.3d 875 (9th Cir. 2013) (in terrorism prosecution, district court admitted testimony of expert on extremist groups and expert in Islamic studies).

Exclusion of relevant evidence is appropriate only if its probative value is "substantially outweighed" by the danger of "unfair prejudice."  Fed. R. Evid. 403 (emphasis added). Here, given the charges, the evidence, and the proof required, the probative value of Dr. Vidino's testimony is considerable and any prejudice is not unfair.  In *Hassan*, the court ruled that evidence linking defendants to extremist jihadist organizations was undoubtedly prejudicial, but not unfairly so. 742 F.3d at 132. "Indeed, the charges that were lodged against the appellants meant that the prosecution would necessarily seek to establish that link." *Id*.; *see also Hankey*, 203 F.3d at 1172 (relevant evidence is

inherently prejudicial and major function of Rule 403 is limited to excluding matter of scant or cumulative probative force) (citation omitted).  Given the complexities of this case, Dr. Vidino's testimony will provide an invaluable aid to the jury in properly and fairly evaluating and understanding the relevancy of the government's evidence, and will advance the truth-seeking and fact-finding process.

### L. A *Daubert* Hearing Is Not Warranted to Establish the Admissibility of Dr. Vidino's Testimony

A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception, rather than the rule. *See* Advisory Committee Notes to Fed. R. Evid. 702.  Specific to the type of testimony at issue here, courts have repeatedly approved the admission of expert testimony regarding terrorist organizations and terrorist activities.  Nor is the trial court's role as gatekeeper intended to serve as a replacement for the adversary system.  As *Daubert* clarified, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. 596.  Thus, any challenge to the testimony of Dr. Vidino are better suited to cross-examination at trial and closing argument.

### V. CONCLUSION

For all of the reasons discussed above, Dr. Vidino's testimony is both reliable and relevant to the facts at issue in this case, and clearly admissible.  Nor is a *Daubert* hearing necessary to determine the admissibility of Dr. Vidino's testimony.  Accordingly, the defendant's motion should be denied.

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

DATED: June 7, 2018

/s/
JEFFREY SHIH
S. WAQAR HASIB
Assistant United States Attorneys