UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>ADAM SHAFI,<br>　　　　Defendant. | Case No. 15-cr-00582-WHO-1<br><br>**ORDER REGARDING MOTIONS TO LIMIT AND EXCLUDE EXPERT TESTIMONY**<br>Re: Dkt. Nos. 206, 208 |

## INTRODUCTION

Adam Shafi is charged with attempting to provide material support to a foreign terrorist organization known as the al-Nusrah Front. Both Shafi and the government filed *Daubert* motions concerning the admissibility of terrorism expert testimony. Shafi moved to exclude Lorenzo Vidino's testimony in its entirety for being unhelpful to a jury, unreliable, unfairly prejudicial, inadmissible character evidence, and in violation of the Confrontation Clause. The government moved to limit testimony by Marc Sageman on Shafi's mental state, religious views, and mental condition. The questions I must answer are: (i) whether the parties exchanged sufficient expert disclosure notices under Federal Rule of Criminal Procedure 16; and (ii) whether Vidino and Sageman can testify on the subjects laid out in each party's expert disclosures. As I directed at the hearing on June 21, 2018, Vidino's expert notice needs to be supplemented and Sageman's testimony must avoid opinions on Shafi's mental state and intent based on Sageman's interviews with Shafi.

## BACKGROUND

**I.　Factual Background**

I have summarized the background of this case, which is known to the parties, in other

orders. In short, the government alleges that Shafi attempted to travel and provide himself in service of the al-Nusrah Front in violation of 18 U.S.C. § 2339B. In August 2014, Shafi was reported missing during a family vacation in Egypt. Compl. ¶ 15. His father was worried that Shafi may have been "recruited," and he told the United States embassy in Cairo, Egypt that Shafi sent a text message to a relative saying he left to "protect Muslims." Compl. ¶¶ 15–16. Shafi returned to his family soon thereafter; once he and his family returned to the United States, Shafi claimed he traveled to Turkey to help Syrian refugees but did not tell his parents about his travels for fear they would not allow it. Compl. ¶ 19.

The FBI obtained a warrant and conducted a search of Shafi's email in December 2014. Compl. ¶ 22. Shafi's email revealed research on traveling to Turkey and routes to Syria through Turkey. Compl. ¶¶ 22–24. Shafi's phone conversations also included statements that America was the enemy and that he wanted to live in Syria. Compl. ¶¶ 27, 29. Shafi was also observed participating in "paramilitary style" training with his two younger brothers in a park near their Fremont, California home. Compl. ¶ 25.

The government alleges that Shafi became increasingly radicalized and by June 2015 he purchased a one-way ticket to Turkey in an attempt to join the al-Nusrah Front. Compl. ¶ 39. He was stopped and interviewed twice by federal agents before his flight. Compl. ¶¶ 42–43. When asked if he was attempting to cross into Syria and join a foreign terrorist organization, he denied it. Compl. ¶ 40–42. Instead, Shafi told the agents that he wanted to help refugees in Turkey and no longer wanted to live in the United States. Compl. ¶¶ 42–43. Shafi also consented to a search of his backpack, and the agents found a copy of the Quran, a book of Islamic prayers, and other items. Compl. ¶ 44.

After the interviews and search, Shafi left the airport and returned home. Compl. ¶ 45. On the way, he made two phone calls. He recounted his experience at the airport prior to his flight and said "what kind of idiot would say yes" in response to the questions asked by the agents that he wanted to join a foreign terrorist organization. Compl. ¶ 47.

**II.    Procedural Posture**

This case is scheduled for a jury trial on August 27, 2018. *See* Order Setting Jury Trial and

1  Pretrial Litigation Schedule [Dkt. No. 198]. Pursuant to the scheduling order, the parties
2  exchanged expert notices and now challenge some of the proposed expert testimony.
3        The government's proposed terrorism expert, Vidino, is expected to testify about
4  background on the al-Nusrah Front and ISIS, prominent figures and violence committed by these
5  organizations, how individuals radicalize and join these terrorist organizations, and vocabulary
6  used by individuals seeking to join. Shafi Mot. to Exclude Expert Testimony and Request for
7  Daubert Hr'g at Ex. A [Dkt. No. 206].
8        Shafi's proposed terrorism expert, Sageman, expects to rebut Vidino and testify about
9  background on al-Nusrah and ISIS, the ways individuals travel to Syria, and the influence that
10  terrorist organizations and world events have on Muslim men. U.S. Mot. to Limit Expert
11  Testimony at Ex. 1 [Dkt. No. 208]. Additionally, Sageman has proposed testimony on Shafi's
12  interest in the Arab Spring, his conservative religious views and disillusionment over time, and his
13  desire to live religiously in a Muslim country. *Id*.

## LEGAL STANDARD

15        A witness may testify as an expert if he is qualified by knowledge, skill, experience,
16  training or education, and his testimony: (a) will help the trier of fact understand the evidence or
17  determine a fact in issue; (b) is based on sufficient facts or data; (c) is the product of reliable
18  principles or methods; and (d) reliably applies the principles and methods to the facts of the case.
19  Fed. R. Evid. 702. The trial judge performs a gatekeeper function to make sure that any expert
20  testimony has "a reliable basis in the knowledge and experience of the relevant discipline."
21  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal quotation marks and alterations
22  omitted); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). The evidence
23  presented is relevant if it will assist the trier of fact to determine and understand the facts at issue.
24  *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion
25  testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).
26  Expert testimony is reliable based on criteria such as "testability, publication in peer reviewed
27  literature, and general acceptance." *Id*. These criteria are ultimately "helpful, not definitive," and
28  the trial judge has discretion to test reliability based on the circumstances in the particular case.

*Id*.  As gatekeeper, the trial judge has no obligation to hear live testimony.  *See United States v. Alatorre*, 222 F.3d 1098, 1102–03 (9th Cir. 2000).

**DISCUSSION**

**I.   VIDINO'S TESTIMONY**

    **A.   Most of the Government's Proposed Testimony is Admissible under *Daubert* and the Federal Rules of Evidence**

        **1.   This Expert Testimony Would be Helpful to the Jury**

Shafi contends that Vidino's testimony would not be helpful to the jury because: (i) he lacks specialized knowledge about the al-Nusrah Front, and (ii) his testimony about ISIS and other foreign terrorist organization individuals is irrelevant.  Shafi insists that Vidino's expertise on The Muslim Brotherhood, ISIS, and al-Qaeda in Europe and Italy, does not translate to specialized knowledge about al-Nusrah and its influence in the United States.  From this distinction Shafi concludes that Vidino cannot offer any specialized knowledge about al-Nusrah.

I disagree.  Vidino has opined on the al-Nusrah Front in his publications, as Shafi notes, even though al-Nusrah has not been the sole focus of his research.  Vidino's Program on Extremism at George Washington University has published works on al-Nusrah and cited his contributions to that research.  His terrorism expert testimony would rest upon experience and knowledge that the jury does not have.

Shafi also seeks to exclude Vidino's testimony on ISIS, and the violent actions of other terrorist organizations and individuals, because it is irrelevant.  The government insists that their central theory explaining why Shafi attempted to join al-Nusrah in Syria depends on al-Nusrah's distinction from ISIS and the violent actions of other organizations and individuals.  Vidino's testimony "logically advances a material aspect of the proposing party's case," and is relevant.  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

An additional inquiry is whether the government's proposed expert testimony will confuse a jury or is unfairly prejudicial.  Shafi claims that Vidino's use of the European definition of terrorism in some of his scholarship will confuse a jury.  Vidino's use of a European definition in his scholarship does not preclude him from offering relevant testimony that the jury can apply to

4

the law. It will not confuse a jury.

As for unfair prejudice, Shafi worries that discussing the violence of ISIS or other affiliated groups and prominent figures may unfairly prejudice the jury against him. "Unfair prejudice" occurs when the evidence has "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. McInnis*, 976 F.2d 1226, 1231 (9th Cir. 1992) (quoting Fed. R. Evid. 403 Notes of Advisory Committee).

Here, the government proposes testimony on violence perpetrated by other terrorist groups not necessarily related to the al-Nusrah Front, distinguishing al-Nusrah and explaining how Shafi became enamored with them. Limited testimony that contrasts different terrorist groups' propensity to violence may be relevant to establish Shafi's interest in joining al-Nusrah as opposed to other groups. The emphasis is on *limited*. Proposed testimony on the "goals and ideologies behind both al-Nusrah and ISIL" would seem to adequately contrast the two terrorist organizations and explain Shafi's interest in al-Nusrah as well. Shafi Mot. to Exclude Expert Testimony and Request for Daubert Hr'g at Ex. A [Dkt. No. 206]. Vidino can testify on violence and other terrorist acts committed by al-Nusrah to the limited extent it is relevant and provides helpful background. In fact, Shafi's own expert is expected to testify on the same topic, that al-Nusrah "did not have the goal of carrying out violent acts outside of the Syrian conflict." U.S. Mot. to Limit Expert Testimony at Ex. 1 [Dkt. No. 208].

Vidino can also offer helpful and relevant testimony on al-Nusrah's goals, ideologies, and how they disseminate information to potential recruits. These are all important subjects for the jury to understand. If the al-Nusrah Front and other terrorist organizations are related, it is appropriate for Vidino to testify on helpful background information for jurors who are not already aware of the various organizations and their practices. As Shafi admits, al-Nusrah and al-Qaeda may have had ties before formally disassociating in 2016. Shafi's own proposed testimony includes "the differences amongst various terrorist organizations operating in Syria, particularly the Islamic State of Iraq and Syria ('ISIS') and Al-Nusra Front." U.S. Mot. to Limit Expert Testimony at Ex. 1 [Dkt. No. 208]. This testimony is relevant, helpful to the jury, and will not unfairly prejudice Shafi.

### 2. Terrorism Expert Research Is Reliable

Vidino's proposed testimony is based on his own research, which Shafi asserts is statistically insignificant, not scientific, and cannot be reliably applied to him. I do not agree that Vidino's research is unreliable or that he is unqualified to serve as a terrorism expert in this case. *Daubert's* general holding applies to scientific and non-technical specialized knowledge, but importantly "the test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. As the government notes, in some circumstances where the proposed expert testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or the theory behind it," strictly applying *Daubert* is not applicable. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Here, Vidino's field of expertise depends more on the knowledge and experience of the expert than the methodology. Vidino and Sageman rely on similar sources of information and the same kinds of evidence to form opinions. Both experts are qualified and offer reliable research that they can apply to the facts of this case.

### B. The Government's Proposed Testimony On "Paths Of Radicalization And Travel" Needs To Be Supplemented

Shafi seeks to exclude Vidino's testimony based on the government's deficient disclosure notice under Federal Rule of Criminal Procedure 16, especially concerning the lack of explanation on testimony about "paths of radicalization and travel." Shafi Mot. to Exclude Expert Testimony and Request for Daubert Hr'g at 3 [Dkt. No. 206]. Shafi argues that he cannot adequately prepare for trial since the government only provided a list of subjects that Vidino would testify on, rather than describing the opinions or the reasons for those opinions. The government replies that their disclosure was no less detailed than Shafi's, and that if one is deficient then both are.

The expert disclosures address issues that are relevant. Neither is particularly detailed, but on the general topics discussed above, which provide background for this case, each is sufficient. However, when the opinions specifically address Shafi and his conduct, more is required. *See* Fed. R. Crim. P. 16 (requiring both parties, upon request, to provide a summary describing the witness's opinions and the bases and reasons for those opinions).

Shafi contends that Vidino's proposed testimony on "paths of radicalization and travel"

forms a terrorist profile that is inadmissible. In terrorism profiling cases, courts limit character evidence primarily when it explicitly labels defendant as a homegrown terrorist. *See e.g.*, *United States v. Mohamud*, No. 3:10-CR-00475-KI, 2013 WL 71806, at *6 (D. Or. Jan. 4, 2013). The government disclaims any intent to provide profiling opinions, and agrees with Shafi that there is no such thing as a terrorist profile. That said, its disclosure that Vidino will discuss "paths of radicalization and travel" requires further explanation to insure that it does not veer into profiling.

As directed on June 21, 2018, the government shall supplement Vidino's disclosure on this topic by July 9, 2018 to summarize his expected testimony and identify the exhibits he intends to use as a basis for them. Sageman shall supplement his disclosure by July 16, 2018 to the extent he intends to rely on exhibits or evidence other than those identified by Vidino to rebut Vidino's opinions. Both supplemental disclosures should be filed on the court docket. If necessary, this issue can be raised again at the pre-trial conference.

### C. The Government's Proposed Testimony Does Not Violate the Confrontation Clause

Shafi asserts that Vidino offers testimonial hearsay because his opinions are based on complaints, indictments, and affidavits that are unavailable for cross-examination. The Confrontation Clause of the Sixth Amendment gives Shafi the right to be confronted with the witnesses against him, and prohibits the admission of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Contrary to Shafi's view, however, there is generally not a *Crawford* issue if the expert is applying "his training and experience to the sources before him" when reaching his own judgment. *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014) (internal quotations and citations omitted). This is consistent with Federal Rule of Evidence 703, allowing experts to rely on otherwise inadmissible hearsay if it is of the kind reasonably relied on to form opinions in that field. *Id.* (quoting Fed. R. Evid. 703).

Complaints, indictments, and affidavits are some of the kinds of documents that terrorism experts reasonably rely on in their field. Both Vidino and Sagemen rely on these sorts of documents. This does not violate the Confrontation Clause.

## II. SAGEMAN'S TESTIMONY

The government insists that Sageman cannot opine on several character and mental state subjects, suggesting Shafi acted in accordance with his good character on a particular occasion. The government also claims that any expert testimony on Shafi's mental state is inadmissible hearsay. Specifically, it challenges proposed testimony on Shafi's "conservative religious views," his feelings of disillusionment, and his "difficult family life" over his desire to live religiously in a Muslim country.

Federal Rule of Evidence 704(b) precludes expert witnesses from testifying "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Shafi proposes that I follow the application of Rule 704(b) in *United States v. Morales*, 108 F.3d 1031, 1033 (9th Cir. 1997), which held that experts are not precluded from "testifying to a predicate matter, even if the jury might infer the necessary *mens rea* from such testimony."

My concern is that Sageman wants to tell the jury what Shafi has told him about his motives and beliefs. An expert may not serve "simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Owens v. Republic of Sudan*, 864 F.3d 751, 789 (D.C. Cir. 2017) (internal quotations omitted); *see* Fed. R. Evid. 703. There would be no effective way to cross-examine Sageman on these conversations and his resulting opinion, and no way to rebut it if Shafi invokes his constitutional right not to testify.

For this reason, mental state testimony on Shafi's actual opinions and conduct is inadmissible if it is based on conversations that Sageman had with Shafi. Sageman may of course opine on the basis of hypothetical facts grounded in the other evidence presented at trial.

**IT IS SO ORDERED.**

Dated: June 28, 2018



William H. Orrick
United States District Judge

8